GOFF, Circuit Judge.
John S. Hebb, the appellee, filed a libel in the district court of the United States for the district of Maryland against Frederick L. Clayton, agent and consignee of the American bark Edmund Phinney, in a cause of pilotage civil and maritime. He alleged that he was a duly-licensed pilot, authorized and competent to pilot vessels of any tonnage and class over the waters of the Chesapeake, to and from the Atlantic Ocean; that the Edmund Phinnej' was an American vessel of between 700 and 800 tons burden, registered in the port of Portland, Me., in the name of J. S. Winslow & Co., as owners, of which Frederick L. Clayton was the agent and consignee in the port of Baltimore; that said vessel, laden with a full cargo of lumber, had cleared and was ready to sail from the port of Baltimore to a foreign port, to wit, to Rosario, on the river Platte, in South America; and that, as so laden, she drew rather more than 16-J- feet of water. It is also set forth in the libel that under the provisions of the Code of the state of Maryland, as amended and reenacted by the act of the general assembly of that state (chapter 40, Acts 1896), it is, among other things, provided that “all vessels sailing under register bound to and from Baltimore city (except vessels employed in and licensed for the coasting trade and American vessels laden either in whole or in part with coke or coal mined in the United States), shall take a licensed pilot or in case of refusal to take such pilot shall themselves, their owners or consignees, pay the said pilot, as if one had been employed, and such pilotage shall' be paid to the pilot first speaking to such vessel (before Cape Henry bears south, if inward bound).” Also, it is alleged that the said Edmund Phinney, being so laden and ready to proceed on her voyage, the appellee, as a duly-licensed pilot, made application to both the captain and to said Frederick L. Clayton, the consignee, and offered himself ready and willing to pilot her to sea, but that both of them declined the offer and refused to take the pilot; that thereupon, he having .so offered, and they having so refused, he presented to said captain and consignee a bill for pilotage, which, under the law, amounted to *559 $82.50, but that payment of the same was refused; that he was informed by them that their excuse for not accepting a pilot was that, in addition to the cargo of lumber aboard said vessel, they had shipped a quantity of coal mined in the United States, amounting to from 20 to 25 tons in all, and that by reason of such alleged shipment of coal they claimed that the vessel was “laden in part with coal mined in the United States,” and that it was therefore exempt from the demand of pilotage. The libel then claimed that such shipment of coal, if made, was not in the usual and regular course of trade to the port of destination, but that the same was colorable merely, and made for the express purpose of evading the requirements of said pilot laws, and that, as it was made for the purpose of evading the law, it was not within the fair and reasonable intent of the same, nor of its proper construction, and that, therefore, the vessel was not “laden in part” with coal so mined, and not exempt from paying the pilotage fees so demanded. Hence he prayed a decree against the consignee for the sum of $82.50. The answer of 'Clayton admitted that the Edmund Phinney was an American vessel of about 650 tons burden, hailing from the port of Portland, Me.; that he was the agent of the vessel in the port of Baltimore for procuring a cargo for her, and that he was her consignee for such purpose; that she was laden in the port of Baltimore, but not that she was fully laden with lumber; that she cleared and sailed from Rosario, in South America, and that when laden she drew about 16-£ feet of water. He alleged that the vessel was partly laden with coal mined in the United States. He denied that the libelant made application, either to him or to the master, after the vessel was loaded, or at any other time, to pilot her to sea, and he denied that any bill for pilotage had been presented to him. He admitted that the vessel did not take a pilot on the voyage from Baltimore, mentioned in the libel, and claimed that there was no obligation on her part so to do, and that a pilot was not needed. He set up that the vessel was partly laden with coal mined in the United States; that she carried 25 tons or more at the bottom of her hold, the balance of her cargo being lumber; and that both the coal and lumber had been shipped in the usual way. He claimed that the vessel was exempt from all pilotage charges. He denied that the coal was shipped for the purpose of evading the pilot laws, and claimed that there was no ground upon which any claim for pilot-age could be lawfully made. The case came on to be regularly heard, when, quite a number of witnesses were examined in open court, all the testimony being set out in the record. The district judge entered a decree in favor of the libelant for the sum claimed, together with the costs of the suit. From that decree this appeal was sued out.
The decision of the questions raised by the assignment of errors depends upon the meaning of the amendment to the Maryland Code, set forth in the libel,—upon its proper construction. There is no material conflict in the testimony, and no trouble as to 'the facts. The case is so clearly stated in the opinion filed by Judge Morris in the court below, and the construction he gives the legislation in question coincides so fully with the conclusion we reach, that we deem it eminently proper to adopt his views as the judgment of this court. We quote from his opinion, as follows:
*560 “The legislature of Maryland, by the amendment to the pilot laws contained in the act of 1890 (chapter 40;, did not intend to exempt all American vessels bound to or from Baltimore, engaged in foreign commerce, from the payment of pilotage, but only those laden in whole or in part with coke or coal mined in the United States. The exemption obviously was intended as a' relief or encouragement to the coal trade. Being a statute to affect trade and commerce, it should receive a sensible construction, looking to its object. It was intended to continue to the pilots their statutory fees for compulsory pilotage, unless the fact of the cargo which the vessel was carrying made it an advantage to the coal trade to exempt her. It would seem, therefore, that to hold that putting on board a few bushels or a few tons of coal gratifies the law is to defeat the law in both these respects. It deprives the pilots of their fees, and does not benefit the coal trade. In the present case a vessel of 657 tons was chartered to take a full and complete cargo of spruce lumber to South America, but the owners reserved the privilege of putting some coal on board as part of her ballast. They bought 25 tons at a cost of $55, and put it in the hold as ballast. The pilotage fees amount to $82.50. The agent of the owners confesses that the incidental advantage of escaping pilotage was a motive, but states that he had also the wish to try the market for coal at the vessel’s port of discharge, never having before made a shipment there. Obviously the owners could not lose, for they would be gainers even if they had to throw the coal overboard. I think, to be entitled to exemption, the vessel’s cargo must, in some substantial proportion, consist of coal or coke, and that this vessel was not in part laden with coal, in any fair commercial sense. It is not sufficient, in my opinion, to entitle the vessel to exemption, if the quantity is of no commercial value as a shipment. Legislation with regard to commercial matters should be construed, if the language will permit, so as to give effect to the scheme which it is apparent the lawmakers had in mind; and it cannot be supposed that when the legislature of 1896 amended a general law, intended to provide for the support of pilots, by introducing into it an exemption in favor of vessels carrying coal, they intended to leave the law in such a state that it would deprive the pilots of their support without benefiting the coal-exporting trade. It is urged against the proposed construction that it will become a matter of doubt and dispute, as to every vessel which has any coal aboard, whether or not it is sufficient to enable her to say that she is laden in part noth coal. But this is a difficulty which attaches to all similar legislation. It must be determined by considering all the circumstances by which reasonable men would be controlled in similar business transactions. If the legislature has failed to establish a definite criterion which can be applied with certainty, all that can be done is to apply a reasonable one. It is a matter of common knowledge in the port of Baltimore that coal is usually shipped in full cargoes; but it is also a fact that, for long voyages, coal is sometimes too weighty if the vessel is filled full, and, therefore, lighter cargo is used to fill up the vessel. It is not improbable that it was for this reason that the legislature, intending to favor the coal trade, provided that vessels should be exempt even when not fully laden with coal, and that it should be held to be essential to entitle a vessel to the exemption that she should be, in a commercial sense, a coal-laden vessel, carrying a reasonable quantity to constitute a cargo, looking to her capacity and the voyage she is to sail. In the present ease, at all events, it seems to me clear that one car load of coal, belonging to the owners and of less value than the pilot fees, dumped as ballast into the hold of a large vessel, which was under charter to carry a complete cargo of lumber, is not a' substantial part of her cargo, but is an attempt to evade the law. The other points are not strongly insisted, and I think could hardly constitute a good defense. The statute obviously contemplates that the consignee, as well as the vessel’s owner, shall be liable. It seems to me that the offer of a pilot was made in good faith. It was made by a pilot who was competent and qualified to take the vessel himself, and the offer was declined solely and openly upon the ground that the vessel was not required to take a pilot because she had on board a cargo partly of coal. The issue was intended to be raised, and it seems to me that it was distinctly raised, and that what took place was an offer and a refusal. I shall sign a decree for the libelant.”
The decree appealed from is affirmed.